IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GUIDEONE MUTUAL <br> INSURANCE COMPANY <br> 1111 Ashworth Road <br> West Des Moines, IA 50265 <br><br> Plaintiff, <br><br> v. <br><br> PROGRESSIVE NATIONAL <br> BAPTIST CONVENTION, INC. <br> 601 -50th Street, N.E. <br> Washington D.C., 20019 <br><br> Serve: <br> Kip Banks <br> 601 -50th Street, N.E. <br> Washington, D.C. 20019 <br><br> Defendant. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * Case No. <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES the Plaintiff, GuideOne Mutual Insurance Company ("GuideOne"), by and through its undersigned counsel, Deborah E. Kane, Esquire and the law firm of Hartel, Kane, DeSantis & Howie, LLP, and files this Complaint for Declaratory Judgment against the Defendant, Progressive National Baptist Convention, Inc. ("PNBC"), alleging the following:

### NATURE OF THE ACTION

1. This is a civil action for declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

2. This action seeks a declaration that GuideOne, *inter alia,* owes no coverage obligations to PNBC under a commercial property policy ("policy") for property damage sustained to the Dr. E.L. Harrison Building ("Harrison Building"), which is located in the District of



HARTEL, KANE,
DESANTIS & HOWIE, LLP
7467 Ridge Road, Suite 100
Hanover, Maryland 21076-3118
Telephone: (301) 486-1200
Facsimile: (443) 749-5150

5924 North 15th Street
Arlington, Virginia 22205

Columbia, after a pipe on the third floor froze and burst, causing extensive water damage to the interior of the building. A true and correct copy of the relevant provisions of the policy is attached hereto as Exhibit A. The loss was discovered by PNBC on February 24, 2015.

3. The insurance policy at issue excludes coverage caused by water leaking or flowing from plumbing equipment as a result of freezing. PNBC is not entitled to coverage under any of the exceptions to the exclusion under the policy. The insurance policy also imposes an obligation upon an insured to mitigate damages by protecting the property from further damage. PNBC failed to comply with these requirements of the insurance policy.

### THE PARTIES

4. GuideOne is an insurance company formed under the laws of Iowa and has its principal place of business in Iowa.

5. PNBC is a corporation formed under the laws of the District of Columbia and has its principal place of business in the District of Columbia.

### JURISDICTION AND VENUE

6. This action is being brought for the purpose of determining a question of actual controversy between the parties.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between GuideOne and PNBC, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391, because PNBC is subject to personal jurisdiction in this judicial district and a substantial part of the events giving rise to the claim occurred in this judicial district, namely a claim for coverage under a liability insurance policy issued to PNBC within this judicial district.



HARTEL, KANE,
DeSANTIS & HOWIE, LLP
7467 Ridge Road, Suite 100
Hanover, Maryland 21076-3118
Telephone: (301) 486-1200
Facsimile: (443) 749-5150

5924 North 15th Street
Arlington, Virginia 22205

9. This Court has jurisdiction over PNBC because it is a corporation organized pursuant to the laws of the District of Columbia.

10. An actual case in controversy of a justiciable nature exists between GuideOne and PNBC, involving the rights and liabilities of the parties under a policy of insurance, identified in more detail below.

## FACTS

### Facts Pertaining to PNBC's Claim

11. The Harrison Building, which is owned by PNBC, is a three-story dormitory-style building, which is approximately 15,000 square feet, that was built in the 1960.

12. On March 1, 2014, PNBC and The Olive Tree Educational Center ("Olive Tree") entered into a lease agreement for the Olive Tree to lease portions of the Harrison Building.

13. Olive Tree leased only the first two floors of the Harrison Building. The third floor was not included in the lease and Olive Tree was prohibited under the lease from using or accessing the third level of the building.

14. The lease required Olive Tree to perform maintenance of the heating system in the Harrison Building. This, however, did not include the third floor of the Harrison Building because it was not a part of, and in fact, was expressly excluded, under the lease.

15. PNBC, through its authorized agents and/or representatives, has represented that Olive Tree did not immediately occupy the Harrison Building because the Olive Tree had to pass certain inspections required by the District of Columbia in order for Olive Tree to conduct its business.



HARTEL, KANE,
DESANTIS & HOWIE, LLP
7467 Ridge Road, Suite 100
Hanover, Maryland 21076-3118
Telephone: (301) 486-1200
Facsimile: (443) 749-5150

5924 North 15th Street
Arlington, Virginia 22205

16. PNBC, through its authorized agents and/or representatives, has further represented that Olive Tree passed the required inspections and allegedly began to use the Harrison Building sometimes prior to February, 2015

17. PNBC cannot, however, provide the occupancy dates for Olive Tree or anyone it may have sub-let any portion of the building ; and as such, the Harrison Building may have been vacant for more than sixty consecutive days prior to the February, 2015 loss.

18. In July 2014, PNBC hired Metropolitan Facilities Solutions ("Metropolitan") to perform an assessment of the physical condition of PNBC's properties, including the Harrison Building.

19. Metropolitan, in its report dated July 29, 2014, found that 70% of the fan coil units, which were to be in place in each room of the Harrison Building to address the heating and cooling needs for the building, were either not operating or missing, concluding that the heating and cooling system for the building had failed.

20. PNBC, through its authorized agents and representatives, has represented that the fan coil units were the only source of heat for the Harrison Building on or about February 24, 2015.

21. Despite the Metropolitan's findings, PNBC did not perform or caused to be perform any maintenance on the fan coil units even though the fan coil units were the only source of heat of the Harrison Building, 70% of the fan coil units were not operational, and none of the of the units were in operation on the third floor in February, 2015.

22. PNBC informed Guide One on February 25, 2015 that it had discovered on February 24, 2015 extensive water damage inside the Harrison Building due to a pipe, which was located on the third floor, freezing and bursting.



HARTEL, KANE,
DESANTIS & HOWIE, LLP
7467 Ridge Road, Suite 100
Hanover, Maryland 21076-3118
Telephone: (301) 486-1200
Facsimile: (443) 749-5150

5924 North 15th Street
Arlington, Virginia 22205

23. GuideOne retained Unified Investigation & Sciences, Inc. ("UIS") to inspect the loss and UIS conducted site inspections of the Harrison Building to determine the source of the water intrusion on July 30, 2015 and August 11, 2015.

24. UIS traced the water intrusion to a breach in a one-inch diameter copper water supply pipe in the wall between the bathroom and third floor lobby on the third floor. UIS further determined that the copper pipe had a breach in the elbow from excessive force applied to the outside radius of the elbow bend, which was due to freezing temperatures. UIS concluded that, since the copper pipe was located in an interior wall between two living spaces and not open to the exterior elements, there was insufficient heat supplied to the third floor which caused the copper pipe to burst.

25. At the time of its July 30, 2015 inspection of the Harrison Building, UIS observed standing water on all three floors, water dripping from the first and second floor ceilings, saturated carpets, and warped wood floors. UIS concluded that water had been permitted to leak and run in the Harrison Building since the date of loss.

26. GuideOne also retained Bill Olson of VeriClaim to assist in adjusting this loss. On March 18, 2015 Bill Olson with VeriClaim inspected the Harrison Building and observed that water was still flowing into the building, causing additional damage beyond the initial loss. PNBC had not contacted a plumber or a mitigation contractor to prevent further damage.

27. On August 10, 2015, Mr. Olson again inspected the Harrison Building and observed that PNBC had still not taken any steps to mitigate the water damage as of that date.

28. GuideOne ordered environmental testing conducted by Environmental Solutions, Inc. ("ESI") to determine the level of microbial growth in the Harrison Building. ESI collected



HARTEL, KANE,
DESANTIS & HOWIE, LLP
7467 Ridge Road, Suite 100
Hanover, Maryland 21076-3118
Telephone: (301) 486-1200
Facsimile: (443) 749-5150

5924 North 15th Street
Arlington, Virginia 22205

nineteen air samples, six from each floor of the building plus one sample to compare outside fungal results. Laboratory testing revealed elevated spore levels at all locations tested.

29. PNBC has made a claim for $1,469,165.25 to GuideOne for property damage to the Harrison Building, allegedly related to the February, 2015 loss.

30. GuideOne retained J.S. Held Construction Consulting ("J.S. Held") to inspect the loss and provide two estimates: one based on all construction currently needed to repair the Harrison Building, and one estimate had the water intrusion been mitigated immediately after it occurred. J.S. Held provided a current estimate of $1,312,663.00 to restore the Harrison Building on a replacement cost basis and $993,258.29 on an actual cash value basis. Had the water intrusion been addressed immediately post-loss, J.S Held estimates that it would have cost $872,723.35 to restore the Harrison Building on a replacement cost basis, and $658,458.54 on an actual case value basis.

31. GuideOne has denied the claim due to PNBC's failure to comply with the policy terms, including, *inter alia*, to maintain heat in the building and to mitigate damages.

### The Insurance Policy at Issue

32. GuideOne issued policy number 1252-419 with effective dates January 31, 2015 through January 31, 2016 to PNBC. The policy includes a Commercial Property Coverage Part, which includes a "Building and Personal Property Coverage Form," No. PCP 23 11 04 09 ("Coverage Form"), and the "Causes of Loss - - Special Form," No. PCP 43 14 04 09 ("Special Form"). See Exhibit A.

33. The Harrison Building is a covered premises under the policy and the applicable policy limit is $2,059,200.00.



HARTEL, KANE,
DESANTIS & HOWIE, LLP
7467 Ridge Road, Suite 100
Hanover, Maryland 21076-3118
Telephone: (301) 486-1200
Facsimile: (443) 749-5150

5924 North 15th Street
Arlington, Virginia 22205

34. The policy provides first party coverage to PNBC for risks of direct physical loss, which includes water damage, unless the loss is otherwise excluded or limited and so long as PNBC as the insured has complied with the conditions of coverage.

35. The policy provides, in relevant part, as follows:

**B. EXCLUSIONS**

2. We will not pay for loss or damage caused by or resulting from any of the following:

  g. Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

  (1) You do your best to maintain heat in the building structure; or

  (2) You drain the equipment and shut off the supply if the heat is not maintained.

  m. Negligent of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

Exhibit A, Special Form, Exclusions, Section B.2.g at 3-4 and Section B.2.m at 5.

36. Section E.3.a.4 of the Coverage Form, entitled "Duties in the Event of Loss or Damage," provides as follows:

**E. LOSS CONDITIONS**

3. Duties In The Event Of Loss Or Damage

  a. You must see that the following are done in the event of loss or damage to Covered Property:

   (1) Notify the police if a law may have been broken.

   (2) Give us prompt notice of the loss or damage. Include a description of the property involved.

   (3) As soon as possible, give us a description of how, when and where the loss or damage occurred.



HARTEL, KANE,
DeSANTIS & HOWIE, LLP
7467 Ridge Road, Suite 100
Hanover, Maryland 21076-3118
Telephone: (301) 486-1200
Facsimile: (443) 749-5150

5924 North 15th Street
Arlington, Virginia 22205

>> (4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

Exhibit A, Coverage Form, Duties in the Event of Loss or Damage, Section E.3.a.4, at 21.

37. The policy also contains an exclusion to coverage if the property becomes vacant. Specifically, the policy provides, in relevant part, as follows:

> **6. Vacancy**
>
> **a. Description of Terms**
>
> (1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:
>
>> (a) When this policy is issued o a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.
>>
>> (b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:
>>
>>> (I) Rented to a lessee or sub-lessee and used by the lessee or sublessee to conduct its customary operations; and/or
>>>
>>> (ii) Used by the building owner to conduct customary operations.
>
> (2) Buildings under construction or renovation are not considered vacant.
>
> (3) Dwellings maintained for occupancy by a "minister" or staff member, whether paid or not, will not be considered vacant at any time.



HARTEL, KANE,
DESANTIS & HOWIE, LLP
7467 Ridge Road, Suite 100
Hanover, Maryland 21076-3118
Telephone: (301) 486-1200
Facsimile: (443) 749-5150

5924 North 15th Street
Arlington, Virginia 22205

  b. **Vacancy Provisions**

If the building where loss or damage occurs have been vacant for more than 60 consecutive days before the loss or damages occurs:

(1) We will not pay for los or damage caused by any of the following even if they are Covered Causes of Loss:

  (d) Water damage;

Exhibit A, Coverage Form, Duties in the Event of Loss or Damage, Section E.6 (a) and (b) at 22-23.

38. The policy also excludes damage from fungus, bacteria, wet and dry rot from coverage, regardless of cause, unless "all reasonable means" were used to save and preserve the property from further damage at the time and after the occurrence. The policy specifically states the following:

  **B. EXCLUSIONS**

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

  h. "Fungus", Wet Rot, Dry Rot And Bacteria

   Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria. But if "fungus", wet or dry rot or bacteria results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

   This exclusion does not apply:

   (1) When "fungus", wet or dry rot or bacteria results from fire or lightning; or

   (2) To the extent that coverage is provided in the Additional Coverage -- Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria with respect to loss or damage by a cause of loss other than fire or lightning.



HARTEL, KANE,
DESANTIS & HOWIE, LLP
7467 Ridge Road, Suite 100
Hanover, Maryland 21076-3118
Telephone: (301) 486-1200
Facsimile: (443) 749-5150

5924 North 15th Street
Arlington, Virginia 22205

>Exclusions B.1.a. through B.1.h. apply whether or not the loss event results in widespread damage or affects a substantial area.

Exhibit A, Special Form, Exclusions, Section B.1.h, at 1 and 3.

39. The policy does provide an "additional coverage" for fungus, wet or dry rot and bacteria if the fungus, wet or dry rot or bacteria is the result of a "specified cause of loss," including water damage. This additional coverage is available "only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence." This additional coverage also contains its own sub-limit of $15,000. This additional coverage provision states as follows:

>1. E. **ADDITIONAL COVERAGE -- LIMITED COVERAGE FOR "FUNGUS", WET ROT, DRY ROT AND BACTERIA**
>
>   1. The coverage described in E.2. and E.6. only applies when the "fungus", wet or dry rot or bacteria is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.
>
>      a.  A "specified cause of loss" other than fire or lightning; or
>
>      b.  Flood, if the Flood Coverage Endorsement applies to the affected premises.
>
>   2. We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:
>
>      a.  Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;
>
>      b.  The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and



HARTEL, KANE,
DESANTIS & HOWIE, LLP
7467 Ridge Road, Suite 100
Hanover, Maryland 21076-3118
Telephone: (301) 486-1200
Facsimile: (443) 749-5150

5924 North 15th Street
Arlington, Virginia 22205

   c. The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

  3. The coverage described under E.2. of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continues to be present or active, or recurs, in a later policy period.

  4. The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

   If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

Exhibit A, Special Form—Additional Coverage, Section E.1, at 9-10.

## COUNT I
## Declaratory Judgment

40. GuideOne restates and realleges paragraphs 1 through 39 as if fully set forth herein.

41. PNBC made a claim for $1,469,165.25 to GuideOne for property damage related to the February 2015 loss.



HARTEL, KANE,
DESANTIS & HOWIE, LLP
7467 Ridge Road, Suite 100
Hanover, Maryland 21076-3118
Telephone: (301) 486-1200
Facsimile: (443) 749-5150

5924 North 15th Street
Arlington, Virginia 22205

42. PNBC did not comply with the requirements under Section B.2.g of the Special Form of the policy to obtain coverage for water that leaks or flows from plumbing, heating, air conditioning, or other equipment caused by or as a result of freezing.

43. Under Section B.2.m of the Special Form of the policy, any portion of the loss caused by PNBC's "neglect" or "failure to use all reasonable means to save and preserve property from further damage at and after the time of loss" is excluded from coverage.

44. Under Section E.3.4 of the Building Coverage Form, PNBC had a duty to "take all reasonable steps" to protect the Harrison Building from sustaining further damage after PNBC discovered the loss on February 24, 2015.

45. Under Section E.6(a) and (b) of the Building Coverage Form of the policy, if the Harrison Building remained vacant for more than sixty consecutive days, PNBC is not entitled coverage as a result of water damage to the property.

46. Under Section B.1.h of the Special Form, damage caused directly or indirectly by fungus, bacteria, wet and dry rot is excluded from coverage. However, Section E of the Special Form provides an "additional coverage" for fungus caused by a specified cause of loss (which includes water damage) up to $15,000.00.

47. To the extent that any fungus, bacteria, wet and dry rot did not exist prior to the alleged loss, PNBC did not use "all reasonable means ... to save and preserve the property from further damage at the time of and after that occurrence," a condition precedent to coverage under the additional coverage provision of the policy.

48. An actual and justiciable controversy exists between GuideOne and PNBC with respect to their duties and obligations under the policy as it pertains to the water intrusion to the Harrison Building on February 24, 2015.



HARTEL, KANE,
DESANTIS & HOWIE, LLP
7467 Ridge Road, Suite 100
Hanover, Maryland 21076-3118
Telephone: (301) 486-1200
Facsimile: (443) 749-5150

5924 North 15th Street
Arlington, Virginia 22205

49. GuideOne is entitled to a declaration of its rights to avoid any obligations contrary to the language of the Policy, or any other agreement or law.

WHEREFORE, GuideOne respectfully requests that this Court enter an Order, declaring as follows:

A. The policy affords no coverage to PNBC for the February 24, 2015 loss to the Harrison Building, which was due to water that leaks or flows from plumbing, heating, air conditioning, or other equipment caused by or as a result of freezing;

B. The policy affords no coverage to PNBC for the February 24, 2015 loss to the Harrison Building because PNBC failed "to use all reasonable means to save and preserve property from further damage at and after the time of loss";

C. The policy does not require GuideOne to pay the increased cost of repairing any Covered Property that was caused by PNBC's failure to mitigate damage after discovery of the February 24, 2015 loss;

D. The policy affords no coverage to PNBC for the February 24, 2015 loss to the Harrison Building due to the vacancy exclusion;

E. The policy affords no coverage to PNBC for mold and mildew remediation because the mold and mildew were caused by PNBC's failure to shut off water to the Harrison Building after discovery of the February 24, 2015 and its failure to employ any water mitigation efforts.

F. The Policy does not require GuideOne to repair, replace, or pay for the replacement of Covered Property that (1) sustained damage from something other than a Covered Cause of Loss; (2) falls within an exclusion to the Policy; or (3) pre-dates the loss; and

G. Any other relief this Court deems just and appropriate.



HARTEL, KANE,
DESANTIS & HOWIE, LLP
7467 Ridge Road, Suite 100
Hanover, Maryland 21076-3118
Telephone: (301) 486-1200
Facsimile: (443) 749-5150

5924 North 15th Street
Arlington, Virginia 22205

Respectfully submitted,

*[signature]*

Deborah E. Kane, Esquire (# 433925)
HARTEL, KANE, DeSANTIS & HOWIE, LLP
7467 Ridge Road, Suite 100
Hanover, Maryland 21076-3118
Telephone: (301) 486-1200
Facsimile: (443) 749-5150
Email: dkane@hartelkane.com
*Attorney for Plaintiff*

E:\DEK\GuideOne v Prog Natl Baptist\Complaint 2.22.16.wpd



HARTEL, KANE,
DeSANTIS & HOWIE, LLP
7467 Ridge Road, Suite 100
Hanover, Maryland 21076-3118
Telephone: (301) 486-1200
Facsimile: (443) 749-5150

5924 North 15th Street
Arlington, Virginia 22205